UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RUTH CALDERÓN-CARDONA, et al.,

    Plaintiffs

        v.

DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, a.k.a. NORTH KOREA, et al.,

    Defendants

Civil Action No. 08-1367(FAB)

## PLAINTIFFS' PRETRIAL MEMORANDUM

TO THE HONORABLE COURT:

NOW APPEAR the plaintiffs, through their undersigned counsel, and very respectfully submit the present Pretrial Memorandum in advance of the bench trial scheduled in this matter for December 2, 2009.

### INTRODUCTION

This is an action for wrongful death, personal injury and related torts, pursuant § 1605A of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, arising from a terrorist attack at Israel's Lod Airport on May 30, 1972 (the "Terrorist Attack").

American citizen Carmelo Calderón-Molina was murdered in the Terrorist Attack and American citizen Pablo Tirado-Ayala was injured in the Terrorist Attack.

The Terrorist Attack was carried out as a joint operation by the Japanese Red Army ("JRA") and the Popular Front for the Liberation of Palestine ("PFLP") terrorist organizations.

The JRA and PFLP planned and executed the Terrorist Attack using material support and resources provided by the defendants, the Democratic People's Republic of North Korea ("North

1

Korea") and North Korea's Cabinet General Intelligence Bureau ("CGIB"), and their officials, employees, and agents.

The Complaint in this action was filed on March 27, 2008. As required by § 1608(a)-(b) of the FSIA, the Clerk of the Court initiated service of process on the defendants, which process included copies of the Complaint, summonses and a notice of suit and Korean-language translations thereof. *See* dkt. # 7.

Service was effected on defendants North Korea and CGIB on July 21, 2008, pursuant to the provisions of FSIA § 1608(a)-(b). *See* dkt. 8.

After the sixty-day period provided by § 1608 had passed without the defendants filing an answer or otherwise responding to this action plaintiffs moved for entry of default against defendants North Korea and CGIB pursuant to Fed.R.Civ.P. 55(a). Dkt. # 8. On October 31, 2008, the Court entered default against North Korea and CGIB. Dkt. # 9.

## LEGAL FRAMEWORK

### A. Background to § 1605A of the FSIA

The FSIA was enacted in 1976 and is the sole basis of jurisdiction over foreign states in the federal courts. *See Argentine Republic v. Amerada Hess Shipping*, 488 U.S. 428, 434 (1989). The FSIA codifies the "restrictive theory" of sovereign immunity under which foreign states are generally immune from the jurisdiction of courts of the United States subject to specific exceptions. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89 (1983).

As originally enacted, the exceptions to immunity under the FSIA included cases in which a foreign state had waived its immunity and those involving commercial activities of a foreign state with a nexus to United States. *See Verlinden*, 461 U.S. at 488 (discussing main exceptions to immunity under the FSIA).

In April 1996, Congress enacted a "terrorism exception" to immunity under the FSIA as part of the Antiterrorism and Effective Death Penalty Act of 1996. Pub.L. No. 104-132, § 221(a)(1)(C), 110 Stat. 1214, 1241. That exception, which was codified at 28 U.S.C. § 1605(a)(7), lifted the sovereign immunity of designated foreign state sponsors of terrorism in civil actions brought by American citizens for terrorist attacks carried out by such foreign states or for which the foreign state had provided material support and resources.

Later in 1996 Congress amended the FSIA (the "Flatow Amendment") to create a cause of action for terrorism against officials, employees and agents of such foreign states. *See* Pub.L. 104-208, § 589, 110 (1996), 110 Stat. 3009-1, 3009-172 (codified at 28 U.S.C. § 1605 note).

The federal courts initially construed § 1605(a)(7) and the Flatow Amendment, read in tandem, as creating a federal cause of action against the foreign state itself. *See e.g. Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1 (D.D.C. 1998). However, the Court of Appeals for the District of Columbia Circuit ultimately held that neither § 1605(a)(7) nor the Flatow Amendment created a cause of action against the foreign state itself. *See Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C.Cir. 2004).

Following *Cicippio-Puleo* the federal courts began to apply non-federal tort remedies (usually under the law of the state in which the plaintiff or decedent was domiciled) to determine the liability of foreign states sued under § 1605(a)(7). This methodology resulted in judgments in which plaintiffs injured by the same terrorist attack received vastly different awards – including cases where some plaintiffs-victims were denied recovery entirely while others were awarded significant damages. *See e.g. Peterson v. Islamic Republic of Iran*, 515 F.Supp.2d 25 (D.D.C. 2007) (ordering that damage awards to family members of U.S. servicemen killed in 1983 attack on U.S. Marine Corps barracks in Beirut be granted or denied on the basis of the widely disparate rules of recovery obtaining in each plaintiff's respective state of domicile).

In order to remedy this problem (and other difficulties faced by § 1605(a)(7) plaintiffs) in 2008 Congress enacted § 1083 of the National Defense Authorization Act for Fiscal Year 2008, H.R. 4986. P.L. 110-181, January 28, 2008 ("NDAA").

Section 1083 of the NDAA replaces § 1605(a)(7) of the FSIA with a new provision, §1605A. Section 1605A(c) creates a new federal cause of action for American citizens injured in terrorist attacks sponsored by designated foreign state sponsors of terrorism. § 1605A(c).

Thus, "§ 1605A(c) abrogates *Cicippio-Puleo* … by creating a federal right of action against foreign states, for which punitive damages may be awarded." *Simon v. Iraq*, 529 F.3d 1187, 1190 (D.C.Cir. 2008), *rev'd on other grounds*, --- U.S. ----, 129 S.Ct. 2183 (2009).

Indeed, § 1605A is "more advantageous to plaintiffs in several respects." *Id*. For example, § 1083 of the NDAA amends § 1610 of the FSIA, which governs enforcement of judgments against foreign states. Section 1083 adds a new subsection, § 1610(g)(1), which significantly eases enforcement of judgments entered under § 1605A. *See* § 1610(g)(1).

Moreover, the NDAA includes provisions allowing plaintiffs to refile a pending § 1605(a)(7) cases under § 1605A (provided certain conditions are met) and to thereby benefit from all the advantages of a § 1605A action. Section 1083(c)(3) provides in relevant part:

> Related actions – If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code ... any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code, if the action is commenced not later than … 60 days after … the date of the enactment of this Act.

§ 1083(c)(3).

The instant plaintiffs originally brought suit against the defendants under § 1605(a)(7) in the United States District Court for the District of Columbia. *Calderón-Cardona v. Democratic People's Republic of Korea*, Civ. No. 06-744 (RBW) (D.D.C.) ("D.C. Action").

4

Section § 1605A was enacted during the pendency of the D.C. Action.

Accordingly, in order to obtain the advantages provided by Congress under § 1605A, the plaintiffs dismissed the D.C. Action without prejudice (*id*. at dkt. # 14) and exercised their right under § 1083(c)(3) of the NDAA[1] to file the instant action under § 1605A.

### B. Default Judgment Against a Foreign State

Notwithstanding defendants' default, the FSIA requires that a default judgment against a foreign state be entered only after a plaintiff "establishes his claim or right to relief by evidence that is satisfactory to the Court." 28 U.S.C. §1608(e).

Thus, pursuant to § 1608(e), the Court cannot enter default judgment in this case unless the plaintiffs show "by evidence that is satisfactory to the Court" that the Court has jurisdiction and that the defendants are liable. *See e.g. Holland v. Islamic Republic of Iran*, 496 F.Supp.2d 1, 12 (D.D.C. 2005) ("Every case brought against a foreign state raises two distinct and crucial legal questions. First, the Court must look to whether it has jurisdiction to hear the claim. In the context of claims implicating the parameters of the FSIA, this jurisdictional determination is guided by an inquiry into whether the case falls within one of the statutory exceptions to the sovereign immunity of a foreign state. Second, the Court must consider the actual liability of the defendant foreign sovereign.") (citations omitted).

At the same time, under § 1608(e) "the Court may accept as true the plaintiffs' uncontroverted evidence." *Wachsman v. Islamic Republic of Iran*, 603 F.Supp.2d 148, 155 (D.D.C. 2009) (internal quotations omitted) (citing *Elahi v. Islamic Republic of Iran*, 124 F.Supp.2d 97, 100 (D.D.C. 2000)). *See*

---

[1] The two conditions required by § 1083(c)(3) – that the original action under § 1605(a)(7) was "timely commenced" and that the § 1605A action be commenced no later than 60 days after the enactment of the NDAA – are clearly met here. Under § 1605(f) § 1605(a)(7) actions were timely if filed within ten years after the date of the enactment of § 1605(a)(7). *Simon*, 529 F.3d at 1194-1196. Section 1605(a)(7) was enacted on April 24, 1996, and the plaintiffs' D.C. Action was filed on April 24, 2006 (*Calderón-Cardona*, Civ. No. 06-744 at dkt. # 1) and thus was timely. And the instant action was filed on March 27, 2008, which is less than 60 days after the enactment of the NDAA on January 28, 2008.

*also Botvin v. Islamic Republic of Iran*, 604 F.Supp.2d 22, 26 (D.D.C. 2009) (same); *Gates v. Syrian Arab Republic*, 580 F.Supp.2d 53, 63 (D.D.C. 2008) (same); *Alejandre v. Republic of Cuba*, 996 F.Supp. 1239, 1243 (S.D.Fla. 1997) (same).

Moreover, plaintiffs may establish their proof in FSIA default judgment proceedings via affidavit, and live testimony is not required. *See e.g. Weinstein v. Islamic Republic of Iran*, 175 F.Supp.2d 13, 17 (D.D.C. 2001); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp.2d 258, 268 (D.D.C. 2003); *Brewer v. Islamic Republic of Iran,* --- F.Supp.2d ---, 2009 WL 3300482 (D.D.C.) (Oct. 15, 2009); *Oveissi v. Islamic Republic of Iran*, 498 F.Supp.2d 268, 272 (D.D.C. 2007); *Bennett v. Islamic Republic of Iran*, 507 F.Supp.2d 117, 125 (D.D.C. 2007).[2]

## THE COURT'S JURISDICTION

Section 1605A(a) eliminates foreign sovereign immunity in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of … extrajudicial killing … or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." § 1605A(a)(1).

This case is an action for money damages and the Terrorist Attack was clearly an act of extrajudicial killing within the meaning of § 1605A.[3]

---

[2] *See also e.g. Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 19 (D.D.C. 2002); *Hutira v. Islamic Republic of Iran*, 211 F.Supp.2d 115 (D.D.C. 2002); *Elahi v. Islamic Republic of Iran*, 124 F. Supp.2d 97, 100 (D.D.C. 2000); *International Road Federation v. Democratic Republic of the Congo*, 131 F. Supp.2d 248, 252 (D.D.C. 2001); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2nd Cir. 1994).

[3] Section 1605A(h)(7) adopts the definition of extrajudicial killing contained in 28 U.S.C. § 1350 note, i.e. "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."

At trial, plaintiffs will demonstrate that the defendants provided material support and resources for the Terrorist Attack, though their officials, employees and agents, who were acting within the scope of his or her office, employment, or agency.

Section 1605A(a)(2)(A)(i)(II) provides in relevant part that this Court has jurisdiction over this action because where, as here the "action [is] filed under this section by reason of section 1083(c)(3) of" the NDAA, the court will have jurisdiction if the defendant "was designated as a state sponsor of terrorism when the original action … under section 1605(a)(7) …was filed." § 1605A(a)(2)(A)(i)(II).

As discussed *supra*, plaintiffs filed this action pursuant to § 1083(c)(3) of the NDAA, on the basis of their original D.C. Action. At the time the D.C. Action was filed, North Korea was designated as a state sponsor of terrorism.[4] Thus, this condition is satisfied.

Finally, § 1605A(a)(2)(A)(ii)(I) requires that "the claimant or the victim was, at the time the act … occurred … a national of the United States."

At trial, plaintiffs will submit evidence showing that the claimants (i.e. the plaintiffs) and the victims (i.e. Carmelo Calderón-Molina and Pablo Tirado-Ayala) were U.S. citizens at the time of the Terrorist Attack.

Since defendants are not immune from this action, this Court has both subject-matter and personal jurisdiction. *See* 28 U.S.C. § 1330(a) (Providing that the "district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state ... with respect to which the foreign state is not entitled to immunity ... under sections 1605-1607 of this title"); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2nd Cir. 1981) (Under the FSIA "subject matter jurisdiction plus service of process equals personal jurisdiction.").

---

[4] North Korea was designated as a state sponsor of terrorism in 1988. *See Notice, Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea*, 53 Fed. Reg. 3477 (Feb. 5, 1988). North Korea's designation was rescinded on October 11, 2008. *See Notice, Rescission of Determination Regarding North Korea*, 73 Fed. Reg. 63540 (Oct. 24, 2008).

## DEFENDANTS' LIABILITY WILL BE SHOWN AT TRIAL

Plaintiffs will establish defendants' liability through the testimony of three expert witnesses (Professor Barry Rubin, Professor Bruce Bechtol and Professor Rohan Gunaratna) and two eyewitnesses (Zeev Sarig and Claude Chanan Zeitoun).

Declarations from plaintiffs' liability witnesses, which generally reflect the substance of the testimony they will provide at trial, are attached hereto.

## PLAINTIFFS' DAMAGES WILL BE SHOWN AT TRIAL

The living children of Carmelo Calderón-Molina, plaintiffs herein, will provide evidence at trial regarding the mental anguish and suffering the family experienced as a result of Carmelo's murder, and the loss of his society, guidance and company. Because of their advanced age and medical condition, two of the plaintiffs, Salvador and Luis, will be unable to testify. For similar hardship reasons, it is possible that other children of Carmelo Calderón-Molina will also be unable to testify. Members of the Calderón-Molina family who are unable to personally testify will provide their testimony by declaration.

Plaintiffs Pablo Tirado-Ayala and his wife Antonia Ramirez-Fiero suffer from medical conditions that preclude their ability to attend or testify at the trial. Both have medical certificates stating, as to Pablo, that he has Alzheimer's, diabetes, is blind, bedridden, unable to ambulate or communicate; and as to Antonia, that she suffers from dementia, congestive heart failure, vertigo and that travel to the court is not recommended. Declarations given by Pablo and Antonia in the context of the D.C. Action (but never submitted) will be presented in lieu of their live testimony. Additionally, Pablo's stepson will testify concerning the deleterious psychological effect the Terrorist Attack had on Pablo and Antonia. Finally, Dr. Alexandra Ramos Duchateu, a clinical psychologist, will provide expert testimony regarding the psychological effects of the Terrorist Attack on Pablo and Antonia.

In addition to their claims for compensatory damages, the plaintiffs are seeking punitive damages, as expressly allowed by § 1605A(c). At trial, plaintiffs' liability experts will address factual issues relevant to the appropriate measure of punitive damages.

WHEREFORE, it is respectfully requested that the Honorable Court take note of the above.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 25th day of November, 2009.

                          LAW OFFICES OF MANUEL SAN JUAN
By:   S/Manuel San Juan
       Manuel San Juan
       USDC-PR No.: 204706
       P.O. Box 9023587
       San Juan, Puerto Rico 00902-3587
       Telephone: (787) 723-6637
       Facsimile: (787) 725-2932

       Attorneys for Plaintiffs

OSEN LLC
Gary M. Osen *(pro hac vice)*
Naomi B. Weinberg *(pro hac vice)*
Aaron Schlanger *(pro hac vice)*
Joshua Glatter *(pro hac vice)*
700 Kinderkamack Road
Oradell, New Jersey 07649
Telephone: (201) 265-6400
Facsimile: (201) 265-0303

NITSANA DARSHAN-LEITNER & ASSOCIATES
Nitsana Darshan-Leitner, Esq.
11 Havatikim Street
Petah Tikva, 49389 Israel
Telephone: (972) 03-7361519
Facsimile: (972) 03-7361520


ROBERT J. TOLCHIN *(pro hac vice)*
111 Livingston Street,
Suite 1928

Brooklyn, New York 11201
Telephone: (718) 855-3627
Facsimile: (718) 855-4696